# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 11, 2010 Session

## MICHAEL CLAWSON, ET AL. v. MICHAEL L. BURROW, ET AL.

### Appeal from the Circuit Court for Carter County
### No. C-8896      Jean A. Stanley, Judge

### No. E2008-02412-COA-R3-CV - FILED APRIL 30, 2010

Rachel M. Clawson ("the Decedent") was an employee of Summers-Taylor, Inc. ("the Employer") when she was killed in a tragic automobile-pedestrian accident. A vehicle driven by Michael Burrow veered off Highway 91 in Carter County and struck her. She had concluded her job duties for the day and was at the rear of her personally-owned truck visiting with co-workers and talking on a cell phone. The Decedent's truck was parked on the side of Highway 91 in an area approved by the Employer for employee parking. Michael Clawson and Sherry Clawson, the Decedent's parents ("the Parents"), filed this wrongful death action against Burrow and the Employer.[1] The Employer filed a motion for summary judgment, arguing that on the undisputed facts the Decedent's death arose out of and occurred in the course and scope of her employment. The trial court agreed and entered an order granting the Employer summary judgment. The Parents appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Richard Baker, Knoxville, Tennessee, for the appellants, Michael Clawson and Sherry Clawson, individually and as the parents and next of kin of Rachel M. Clawson, deceased.

---

[1] It appears that at some point the Tennessee Department of Transportation ("TDOT") was added as a defendant. We have not been informed as to whether claims against TDOT and/or Burrows have been resolved, but the status of any such claims would not have any impact on the issue that is before us. The trial court certified the order granting summary judgment as a final judgment pursuant to Tenn. R. Civ. P. 54.02. The notice of appeal is from the order granting summary judgment to the Employer. We will leave it to the trial court and the parties on remand to deal with any claims against any defendant other than the Employer.

Howard E. Jarvis and Robert L. Vance, Knoxville, Tennessee, and John M. Roche, Denver, Colorado, for the appellee, Summers-Taylor, Inc.

**OPINION**

I.

This is the second time this case has been before this Court. In ***Clawson v. Burrow***, 250 S.W.3d 59 (Tenn. Ct. App. 2007)(***"Clawson I"***), we affirmed the trial court's refusal to grant summary judgment to the Employer. The Employer's motion was predicated on its argument that, since the Parents accepted payment from the Employer's workers' compensation carrier, they had elected workers' compensation as the exclusive remedy available to them from the Employer for the Decedent's wrongful death. The exclusive remedy provision is found at Tenn. Code Ann. § 50-6-108(a)(2008), which states as follows:

> The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of the employee, the employee's personal representative, dependents or next of kin, at common law or otherwise, on account of the injury or death.

In ***Clawson I*** we held that

> application of the [exclusive remedy] provision depends upon whether the Decedent's death arose out of and in the course of her employment. [The Employer] may not use the exclusivity provision of § 50-6-108 to secure a judgment as a matter of law [despite payments made] unless it can show there was no genuine dispute of material fact that the Decedent's death arose out of and in the course and scope of her employment.

***Id.*** at 63. The Employer applied to the Supreme Court for permission to appeal our judgment in ***Clawson I***. The Supreme Court denied the application in an order that suggested the case was ripe for a determination of whether or not the Decedent's death arose out of and in the course and scope of her employment. The High Court stated:

> We note, however, that the papers . . . reflect[] that the trial court has not ruled on [the Employer's] motion for summary judgment [asserting that the death arose out of and in the course

-2-

of employment] and that, contrary to its August 8, 2006 order, the trial court should, on proper motion and when the material facts are undisputed – as they appear to be in this case, decide whether Ms. Clawson's injuries arose out of and in the course of her employment.

On remand, the trial court and the parties took the High Court's statement to heart. The Employer promptly filed a "motion for summary judgment in accordance with the Tennessee Supreme Court *per curiam* order." (Capitalization omitted.) The new motion incorporated the "course of employment" summary judgment motion mentioned by the Supreme Court, filed before the appeal in **Clawson I**. The Parents filed a motion for summary judgment asking that the court hold that the Decedent "was no longer in the course of her employment at the time of the collision." Thus, when the matter came before the trial court for hearing, it did so on the dueling motions of the parties as well as facts submitted by both parties as undisputed for the purposes of the motions. The most notable of the undisputed facts are the following ones acknowledged by the Parents to be true:

3. The Decedent worked as a construction Zone Flagger.

Response: Undisputed.

4. On July 19, 2002, the Decedent had parked her vehicle along the side of the road in a parking area approved by [the Employer].

Response: Undisputed.

5. The accident occurred while the Decedent was standing near her truck visiting with two co-workers.

Response: Undisputed.

6. The accident occurred less than 30 minutes after [the Employer] dismissed the Decedent from her work duties.

Response: Undisputed.

7. The accident occurred at 4:31 p.m., one minute after [the Employer] stopped paying the Decedent for her time.

Response: Undisputed that Rachel Clawson was paid until 4:30 p.m., however the exact time of the accident may be subject to dispute.

8. [The Employer's] employees often spend time on [Employer's] premises after being released from their work duties.

Response: Undisputed, immaterial fact.

9. After being released from their work duties, [the Employer's] employees often engage in activities on [Employer's] work premises such as putting away tools and equipment, and . . . often visit with each other during this time.

Response: Undisputed, immaterial fact.

10. [The Employer] does not prohibit its employees from visiting on . . . work premises after they have been released from their work duties.

Response: Undisputed, immaterial fact.

11. [The Employer] acquiesces to the practice of employees meeting and visiting on . . . work premises after being released from their duties to the extent that the activity is a regular incident of . . . employment.

Response: Undisputed, immaterial fact.

12. In fact, after a[n] . . . employee is released from his or her work duties, [the Employer] pays the employee until the top of the hour or bottom of the hour following such release.

Response: Undisputed, immaterial fact.

The Employer admitted that the following facts submitted by the Parents were undisputed for the purposes of the pending motions for summary judgment:

Terri Davis [,Rachel's co-worker,] . . . and Rachel "done had our vests off . . .[,]" were not loading anything in the back of the truck, and . . . Rachel had loaded her flags, and . . . they were . . . engaging in private conversation, . . . . when the injury suddenly occurred.

Rachel took her orange vest off at the time Wayne Buchanan [,her supervisor,] dismissed Terri Davis and Rachel Clawson from their work duties.

Wayne Buchanan had nothing else for Rachel to do that day and had no intention of asking Rachel to do anything after he dismissed her.

Based on the above undisputed facts, the trial court granted summary judgment in a order that held the injury both arose out of and in the course of employment. As to the requirement that the injury must arise out of the employment, the court stated:

Generally, for an injury to arise out of employment, it must emanate from a peculiar danger or risk inherent to the nature of the employment. . . . The phrase "arising out of" requires that a causal connection exist[] between the employment conditions and the resulting injury. It seems to this Court that a flag person being struck and killed by a negligent driver while standing just off the roadway demonstrates a causal connection between the conditions under which the work is performed and the resulting injury. That is, the injury emanated from a peculiar danger or risk inherent to the nature of Ms. Clawson's employment and this Court concludes that her injuries and death "arose out of" her employment.

With regard to the requirement that the injury be "in the course of" employment, the trial court noted that according to ***Carter v. Volunteer Apparel, Inc.***, 833 S.W.2d 492 (Tenn. 1992), an employee is still in the course of employment "a reasonable interval before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts." ***Id.*** at 494. The court reasoned that talking with co-employees during a post-work break was comparable to "eating, drinking, smoking, seeking toilet facilities, seeking fresh air, coolness or warmth" all of which were treated by the ***Carter*** opinion as "incidental acts." Thus, the trial court held as follows:

-5-

The . . . ". . . inquiry to determine whether the injury occurred in the course of employment focuses on the time, place and circumstances of injury." [(quoting **Gooden v. Coors Technical Ceramic Co.**, 236 S.W.3d 151, 154 (Tenn. 2007).] Of significance in Ms. Clawson's case is that the uncontested evidence demonstrates the [the Employer] knowingly permitted its employees to gather on the side of the road where their vehicles were parked after being released from work, that this occurred on a regular basis, and that the company knew this occurred. Ms. Clawson was struck less than 30 minutes after she was released from work and within . . . a few minutes of the time through which she was paid[,] *i.e.* she was released sometime after 4:00 – she was struck at approximately 4:30 – she was paid through 4:30 p.m. This Court can not help but conclude that was a reasonable time for her to have delayed her departure from the work site, that her employer acquiesced in this delay and that Ms. Clawson's injuries arose in the course of her employment.

The Parents filed a motion to alter or amend which the trial court denied. The court certified the summary judgment as final, and the Parents filed a timely notice of appeal.

II.

On appeal, the Parents raise only this one issue:

Whether the trial court erred when it granted the Employer summary judgment.

III.

A party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see* **Penley v. Honda Motor Co.**, 31 S.W.3d 181, 183 (Tenn. 2000). Because the resolution of a motion for summary judgment is a matter of law, this Court reviews the trial court's order granting summary judgment *de novo* with no presumption of correctness. **Blair v. West Town Mall**, 130 S.W.3d 761, 763 (Tenn. 2004). Also, this court reviews the evidence in the light most favorable to the opponent of summary

judgment and draws all reasonable inferences in favor of that party. **Staples v. CBL&C Assocs., Inc.**, 15 S.W.3d 83, 88 (Tenn. 2000).

IV.

The Parents argue that the Employer did not establish that the injury to the Decedent was a compensable injury under the workers' compensation statutory scheme because it did not satisfy the "time, place and circumstances" test applicable to whether the employee was "in the course of employment" at the time of the injury. The Parents concede that the "place" part of the test was satisfied, but challenge both the "time" aspect and the "circumstances" aspect of the test. As to the time requirement, the Parents state, "Decedent had been released from her employment at 4:01 p.m. or 4:10 to 4:15 p.m. but in any event some 16 to 31 minutes prior to Decedent being struck at 4:31 p.m. . . ." Thus, they argue, that "Decedent, by 4:31 p.m., was outside the time parameters of her employment relationship, or at a minimum, material fact questions exist as to whether those facts, and inferences to be drawn therefrom would indicate that Decedent was no longer within the employment relationship at the time of injury." We cannot agree with the Parents' argument. It could not be clearer that the "time" factor includes a "reasonable interval before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts." **Carter**, 833 S.W.2d at 494. Incidental acts include such things as "eating, drinking, smoking, seeking toilet facilities, . . . seeking fresh air, coolness or warmth." **Id.** at 495 (footnote omitted). It is not necessary that the activity being done at the time of the injury benefit the employer. **Id.** The Parents, in response to the Employer's statement of undisputed facts, admitted that "[The Employer] acquiesces to the practice of employees meeting and visiting on . . . work premises after being released from their duties to the extent that the activity is a regular incident of . . . employment." Even without this admission, we agree with the trial court's legal analysis that visiting with co-workers is comparable to comfort activities such as eating, drinking, smoking, etc. We also note that based on undisputed facts the accident happened one minute after the end of the Decedent's paid shift time, *i.e.*, 4:30 p.m. We thus hold that the "time" factor was satisfied as a matter of law based on undisputed facts.

The Parents argue at length that the "circumstances" of the injury are not shown to be within the holding of **Carter**. The core of the argument, however, is that "the activity being engaged in at the time of the injury was completely personal [and] . . . ha[s] no connection with the employee's job related functions, and does not show that the employee was furthering any interest of the employer at the time of the injury." This argument completely discounts more than one aspect of the **Carter** opinion. As we have already noted, it is not necessary that the "incidental" act benefit the employer. **Id**. In fact, we find it hard to imagine how an employee's "smoking" could benefit an employer. A key component to the holding in **Carter** is that an injury can be compensable even though the employee is off duty,

-7-

if it happens in that "reasonable interval before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts." *Id*. We also cannot ignore the Parents' admission that "the practice of employees meeting and visiting on . . . work premises after being released from their duties [happened] to the extent that the activity is a regular incident of . . . employment." We believe that this admission, as well as the record facts upon which the submission was based, coupled with the holding of *Carter*, establishes, as a matter of law, that the "circumstances" of the injury were within the course of employment.

The Parents attempt to limit the holding of *Carter* to "plant employees having a fixed time to clock in." The Parents argue that since the Decedent did not work in a plant and did not punch a time clock *Carter* is inapplicable. We agree with the Employer that the *Carter* opinion did not place such explicit limitations on its holding. It would be a misapplication of law to hold that the liberal construction given to the workers' compensation scheme – one that requires the courts to "liberally construe the Workers' Compensation Law in order to secure benefits for injured workers"[2] – can be utilized in some way to restrict *Carter's* application to plant employees only. We believe also that any such possibility is eliminated by at least one recent opinion of the Supreme Court which applied the holding of *Carter* to a business other than a plant setting where employees punch time clocks. In *Wait v. Travelers Indemnity Co.*, 240 S.W.3d 220 (Tenn. 2007), the High Court held that a tele-commuter who worked from an office in her home was still in the course of employment when she was attacked during her lunch break at her home.[3] *Id.* at 227. We follow the High Court's lead in *Wait* and hold that *Carter* is not limited to the context of a plant employee whose work day revolves around a time clock.

The Parents also attempt to avoid the holding in *Carter* by arguing that this case is more akin to the "en route" cases such as *Lollar v. Wal-Mart Stores, Inc.,* 767 S.W.2d 143 (Tenn. 1989). We do not see how these cases help the Parents. The Decedent was not en route anywhere at the time of the accident. She was visiting with a co-employee on the premises. More importantly, *Lollar* and other such cases are in accord with *Carter* in that both lines of cases represent an expansive reading of the law to allow injuries to fall within workers' compensation coverage. Both lines of cases are consistent with the recent observation of the Supreme Court that "[t]he remedial policies of the Worker's Compensation Act would be undermined if too severe a line were drawn controlling the compensability of injuries that occur during the normal course of the work day after

---

[2]*Building Materials Corp v. Britt*, 211 S.W.3d 706, 713 (Tenn. 2007).

[3]The Court ultimately denied benefits because the injury did not arise out of the employment. *Wait*, 240 S.W.3d at 229-30.

employees have arrived for work, have started working, and before they have left for the day." **Wait**, 240 S.W.3d at 226 (brackets in original) (*quoting* **Holder v. Wilson Sporting Goods Co.**, 723 S.W.2d 104, 107 (Tenn. 1987)). Accordingly, we hold that, as a matter of law, the injury to the Decedent was within the course of her employment. We believe our holding is compelled by the policy of applying the workers' compensation law liberally in favor of finding that a given injury is compensable, even though our holding in this particular case is contrary to a favorable outcome for the employee's representatives.

The Parents argue that the Employer "fails to address the 'arising under' requirement entirely" in its papers filed with the trial court and therefore should have lost the motion. We are not convinced. The "motion for summary judgment in accordance with the Tennessee Supreme Court *per curiam* order" specifically stated that "plaintiffs' tort claims against [the Employer] are barred by the exclusive remedy provision of the Tennessee Workers' Compensation Act, Tenn. Code Ann. § 50-6-101 *et seq*. . . . because Decedent's injury and death arose out of and in the course of her employment. . . ." The facts submitted by the Employer as undisputed, and admitted by the Parents to be undisputed, address the issue as follows:

> The Decedent worked as a construction Zone Flagger.
>
> On [the day of the accident] the Decedent had parked her vehicle along the side of the road in a parking area approved by [the Employer].
>
> The accident occurred while the Decedent was standing near her truck visiting with two co-workers.

The motion also quoted from the *per curiam* order wherein the High Court identified the issues for determination to include whether the injury arose out of employment. It appears to us that not much discussion was devoted to the issue because it was not viewed to be subject to serious debate.

Nevertheless, the trial court directly addressed the issue of whether the injury arose out of the employment. The Parents submit, correctly, that "[a]n accidental injury 'arises out of' one's employment when there is apparent to the rational mind, upon a consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." The Parents cite **Hendrix v. Franklin State Bank**, 290 S.W. 30 (Tenn. 1926). The Employer phrases the test a little differently, quoting from **Wait**, 240 S.W.3d at 228 as follows: "[F]or an injury to 'arise out of'

employment, it must emanate from a peculiar danger or risk inherent to the nature of the employment." The trial court gave heed to both versions in stating:

> It seems to this Court that a flag person being struck and killed by a negligent driver while standing just off the roadway demonstrates a causal connection between the conditions under which the work is performed and the resulting injury. That is, the injury emanated from a peculiar danger or risk inherent to the nature of Ms. Clawson's employment and this Court concludes that her injuries and death "arose out of" her employment.

We find no error in the trial court's analysis and adopt it. Accordingly, we hold that the injury that resulted in the Decedent's tragic death arose out of her employment as a matter of law based on the undisputed facts.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellants Michael Clawson and Sherry Clawson. This case is remanded, pursuant to applicable law, for collection of costs assessed below and such further proceedings as necessary with regard to any claims pending against other parties.

_____
CHARLES D. SUSANO, JR., JUDGE