**FILED**

**August 7, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 10:46 AM**



## COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Ralph Joseph Lallo** | ) | **Docket No.: 2015184839** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 33804-2015** |
| | ) | |
| **Marion Environmental, Inc.** | ) | **Date of Injury: April 2, 2015** |
| **Employer,** | ) | |
| **And** | ) | **Judge: Robert Durham** |
| | ) | |
| **Gallagher Bassett** | ) | |
| **TPA** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on July 21, 2015, upon the Request for Expedited Hearing filed by Ralph Joseph Lallo (Mr. Lallo), the Employee, on June 10, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Marion Environmental, Inc. (Marion), is obligated to provide medical benefits and temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. Lallo is entitled to medical benefits, but is not entitled to temporary disability benefits at this time.

## ANALYSIS

### Issues

1. *Whether Mr. Lallo sustained an injury to his right arm on April 2, 2015, which primarily arose out of and in the course and scope of his employment with Marion;*

2. *Whether, on April 7, 2015, Mr. Lallo sustained a separate injury to his right arm, or an aggravation or exacerbation of the April 2, 2015 injury, primarily arising out of and in the course and scope of his employment with Marion;*

1

3.     *Whether Mr. Lallo provided sufficient and timely notice to Marion with regard to the alleged April 2 and April 7 injury or injuries to his right arm;*

4.     *Whether Mr. Lallo is entitled to evaluation and treatment by an authorized treating physician before Marion receives medical records regarding Mr. Lallo's right shoulder surgeries and a carpal tunnel release in his right arm;*

5.     *Whether Mr. Lallo is entitled to reimbursement for medical expenses as well as mileage expenses for medical treatment he has already received for his right arm; and,*

6.     *Whether Mr. Lallo is entitled to temporary disability benefits following his termination by Marion on April 30, 2015.*

### Evidence Submitted

The Court admitted into evidence the following exhibits:[1]

1. Medical certification and records of Covenant Family Practice;
2. Medical certification and records from Seven Springs Orthopaedic;
3. Affidavit of Ellen Gallant
4. Affidavit of Tom Gallant
5. Affidavit of Mr. Lallo;
6. Separation Notice dated April 30, 2015;
7. Letter from Mr. Lallo to Marion titled "Notice of Injury" and dated April 30, 2015.
8. First Report of Injury
9. C-42 Choice of Physician Form

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), dated May 12, 2015
- Dispute Certification Notice (DCN), dated May 29, 2015
- Request for Expedited Hearing (REH), dated June 10, 2015 (with attached affidavit)
- Position Statement of Marion
- Position Statement of Mr. Lallo.

---

[1] Mr. Lallo offered the affidavit of Kenneth Harris as corroborating evidence of his involvement in a logging operation. Marion objected to Mr. Harris' affidavit because Mr. Lallo did not list him as a witness in the REH and it did not have an opportunity to review the affidavit prior to the hearing. Rule 7.02 of the Practice and Procedures of the Court of Workers' Compensation Claims, which governs Expedited Hearings, states "[a]ffidavits filed after the five (5) day response time [from the filing of the REH] will NOT be accepted into evidence in on the record, telephonic, or in-person evidentiary hearings." Thus, Mr. Lallo's motion to enter the affidavit of Kenneth Harris is denied.

2

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

The following witnesses provided in-person testimony:

- Mr. Lallo,
- Mr. Tom Stadleman,
- Mr. Mark Lucas, and
- Mr. Tom Gallant.

The parties stipulated that the Wage Statement filed by Marion is an accurate reflection of Mr. Lallo's wages while employed with Marion.

**History of Claim**

Mr. Lallo is a fifty-two year old resident of Montgomery County, Tennessee. Marion is a business owned by Tom Gallant and his ex-wife, Ellen, which specializes in the clean-up and disposal of hazardous industrial waste. Marion's principal office is in Chattanooga, but it also has an office in Nashville. On May 27, 2014, Marion hired Mr. Lallo as an Emergency Response (ER) Manager to work out of its Nashville office. (Ex. 3.) As ER Manager, Mr. Lallo cleaned up and disposed of biohazardous waste found at accident and crime scenes. Mr. Gallant testified that Marion also expected Mr. Lallo to market these services to law enforcement and other emergency agencies. When not engaged in ER work, Mr. Lallo worked with other Marion crews cleaning industrial hazardous waste sites. Mr. Lallo's job frequently required strenuous physical activity, such as carrying cleaning equipment and maneuvering barrels of cleaning fluids or hazardous waste.

Mr. Lallo testified that, on April 2, 2015, he was cleaning a robbery site with co-worker, Tommy Stadleman. As he ripped up carpet, Mr. Lallo felt a tearing sensation along with pain in his right arm around his bicep. He told Mr. Stadleman about the incident, but continued to work since they were nearing the end of the project. Mr. Stadleman corroborated Mr. Lallo's account and further asserted that Mr. Lallo finished the project even though he reported pain in his right arm.

Mr. Lallo testified that, although he had undergone multiple right shoulder surgeries and a right carpal tunnel release several years ago, he had no problems with his right arm prior to April 2. Furthermore, the pain and weakness he felt around his bicep and elbow were different from the symptoms he previously experienced with his right shoulder and carpal tunnel syndrome. Mr. Stadleman testified he worked with Mr. Lallo for several years and never knew him to complain of right-arm pain before April 2.

3

Mr. Lallo testified he told Mark Lucas, his immediate supervisor, about the incident on April 3. On examination, Mr. Lucas refuted this statement, but did admit Mr. Lallo's co-workers told him about the April 2 incident at some point over the next few weeks.

In any event, Mr. Lallo testified he continued working over the next several days, primarily in the office. The pain in his arm had lessened but was still present with certain movements. On April 7, 2015, Mr. Lucas walked into Mr. Lallo's office and asked Mr. Stadleman to put his arms around his chest and lift him up in an attempt to "pop" his back and alleviate his back pain. Mr. Stadleman lifted Mr. Lucas up, but was unable to "pop" Mr. Lucas' back. Mr. Lucas then asked Mr. Lallo to try. Mr. Lallo grabbed Mr. Lucas around his forearms and lifted up. The first attempt was only partially successful, so Mr. Lallo lifted Mr. Lucas up again. Mr. Lallo testified that, when he did so, he immediately felt intense pain in his right arm.

Mr. Lucas testified Mr. Lallo winced and grabbed his right arm with his left hand. Mr. Lucas further testified that later that day, Mr. Lallo called and told him he had left work to see his family doctor, Robert Wilson, M.D., about his arm pain. Mr. Lallo admitted he had previous workers' compensation claims and was familiar with the process; however, he decided to pursue treatment on his own rather than press for treatment through workers' compensation. Mr. Lucas testified that after talking with Mr. Lallo, he called Paul van Austen, human resource manager with Marion, and reported the incident; however, he did not prepare any written reports.

Dr. Wilson's record noted that Mr. Lallo complained he was unable to lift his forearm against gravity, and he experienced "marked discomfort" if he tried to extend his forearm. (Ex. 1 at 3.) However, Dr. Wilson did not observe any bruising or obvious deformity. Given Mr. Lallo's complaints and his worry that he had ruptured his biceps tendon, Dr. Wilson referred him to an orthopedist for further evaluation. *Id.*

Dr. Jason Haslam, orthopedist, saw Mr. Lallo on April 9, 2015. (Ex. 2 at 2.) According to Dr. Haslam's record, Mr. Lallo complained of a "one-week history of severe anterior right elbow pain." Mr. Lallo told Dr. Haslam about the April 2 incident, stating that he first felt a "tearing sensation" and then brief but intense pain. Mr. Lallo stated the pain improved over the next few days, but he was still experiencing mild discomfort when, on April 7, he attempted to lift his co-worker and felt another "intense tearing sensation" in his distal bicep. *Id.*

Dr. Haslam's record goes on to note that Mr. Lallo stated the pain had since worsened and he had significant weakness in his right elbow and forearm. Mr. Lallo advised Dr. Haslam of his prior shoulder surgeries, but denied any history of elbow pain. On examination, Dr. Haslam noted no bruising, swelling or palpable defect around the bicep. Mr. Lallo displayed full range of motion, but complained of intense pain and

4

weakness when he moved his arm. X-rays did not reveal any injury. Dr. Haslam provided a sling and recommended an MRI. He offered pain medication, but Mr. Lallo declined. *Id.* Dr. Haslam also provided a "Return to Work" form restricting Mr. Lallo from working with his right arm. (Ex. 2 at 6.)

Mr. Lallo testified he provided the work excuse to Mr. Lucas, although Mr. Lucas testified he had never seen the April 9 note before the hearing. Mr. Lallo testified he continued to work over the next few weeks, but wore a sling while at work.

On April 22, 2015, Mr. Lallo returned to Dr. Haslam's office and saw Josh Sloan, N.P. (Ex. 2 at 3, 4.) The record noted that Mr. Lallo's range of motion in his right arm had increased and the pain had gotten better, although he still had considerable weakness. On examination, Mr. Lallo had almost full range of motion in his right elbow and only mild tenderness with palpation over the biceps tendon, although he still experienced "significant discomfort" with resisted supination. *Id.*

Mr. Sloan noted improvement, but recommended an MRI if Mr. Lallo still experienced significant discomfort and weakness after four weeks. *Id.* Dr. Haslam's office provided a "Return to Work" form stating Mr. Lallo would be under restrictions from two to four weeks and restricted him from lifting more than two pounds with his right arm for two weeks, but then could progress to lifting "as tolerated." (Ex. 2 at 7.) Mr. Lallo testified he gave the work excuse to Mr. Lucas on April 22, and further noted his next doctor's appointment on Mr. Lucas' calendar.

On April 30, 2015, Mr. Gallant met with Mr. Lallo at Marion's Nashville office. Mr. Lallo testified Mr. Gallant told him Marion was going in a new direction with its Emergency Response division and his services were no longer required. At the hearing, Mr. Gallant admitted this was what he told Mr. Lallo. However, he also testified Marion actually fired Mr. Lallo for a number of reasons: (1) Mr. Lallo consistently failed to follow instructions and was at odds with other supervisors about his job duties, which affected the safety and morale of other Marion employees; and (2) Mr. Lallo violated Marion's policy against secondary employment by working in a logging operation. Ellen Gallant, President of Marion, testified by affidavit that Marion terminated Mr. Lallo for working in a logging operation. (Ex. 3.)

Mr. Lucas testified he recommended Mr. Lallo's termination because he had witnessed Mr. Lallo's refusal to perform his job duties as instructed and several other supervisors no longer wanted to work with Mr. Lallo. However, he admitted that, prior to the April 30 meeting, neither he nor anyone else at Marion ever warned or reprimanded Mr. Lallo about poor job performance, and Mr. Lallo's personnel file did not contain any documentation of poor performance. Furthermore, Mr. Lucas and Mr. Gallant admitted Mr. Lallo was an experienced employee and Mr. Gallant testified that Mr. Lallo was a good machine operator.

5

With regard to the secondary employment, Mr. Lallo testified he had never seen or been told of Marion's policy against it. Furthermore, he witnessed two other employees engaging in business outside of their employment with Marion with no repercussions. Finally, he testified he did not actually engage in logging, but only received a referral fee for coordinating a logging operation between a former customer and a friend, Mr. Kenneth Harris.

Mr. Lucas testified Mr. Lallo told him some time before the termination that he had a crew and had been logging over the weekend. This conversation arose because Mr. Lucas saw Mr. Lallo ask another employee to cash a check for him, and he casually asked him about it. Mr. Lucas further testified he never signed an employment agreement prohibiting secondary employment; and that, until Mr. Lallo's termination, he had been unaware of Marion's policy against it.

Mr. Lallo testified that, following the April 30 meeting, Mr. Gallant gave him the Separation Notice form Marion subsequently filed with the Division of Employment Security. The form stated Marion had terminated Mr. Lallo due to "lack of work." (Ex. 6.) The form did not note any other reason. Ellen Gallant signed the form as President of Marion, certifying that it was true and correct. *Id.*

Mr. Lallo testified that he faxed a letter to Mr. Lucas recounting the incidents of April 2 and April 7 and asking Mr. Lucas to turn the matter over to Marion's workers' compensation carrier. (Ex. 7.) Marion filed a First Report of Injury on May 1, 2015. (Ex. 8.) Marion's insurance carrier provided a C-42 Choice of Physician form to Mr. Lallo a few days later, and he chose Dr. Donald Huffman from the panel on May 12, 2015. (Ex. 9.) However, Mr. Lallo testified the carrier has yet to authorize an appointment with Dr. Huffman, and has not paid him temporary disability benefits. Mr. Lallo also testified Marion contested his request for unemployment benefits on the grounds that Marion terminated him for cause. He further testified he has looked for employment since the termination, but he is unable to find work.

Mr. Lallo filed a PBD on May 12, 2015, seeking medical and temporary disability benefits. On May 19, 2015, Dr. Wilson wrote a letter stating that, based on Mr. Lallo's history, the "most likely scenario" was that Mr. Lallo injured his right arm on April 2, 2015, and aggravated the injury on April 7, so that he required medical attention. (Ex. 1 at 4.) The parties did not resolve the disputed issues through mediation and the Mediation Specialist filed the DCN on June 5, 2015.

## Mr. Lallo's Contentions

Mr. Lallo contends he suffered a compensable injury to his right arm on April 2,

6

2015, while pulling up carpet on a project for Marion. He further contends he suffered an additional compensable injury, or at least exacerbated his April 2 injury, when he picked up Mr. Lucas on April 7 in an attempt to "pop" Mr. Lucas' back. Mr. Lallo cites several cases to support his position that the April 7 incident was a compensable event: *Wait v. Travelers Indemnity Co. of Illinois*, 240 S.W.3d 220 (Tenn. 2007); *Gooden v. Coors Technical Ceramic Co.*, 236 S.W.3d 151 (Tenn. 2007); *Templeton v Wilson*, 123 S.W.2d 824 (Tenn. 1939); and *Clawson v. Burrow*, 327 S.W.3d 638 (Tenn.Ct.App. 2010.). Mr. Lallo asserts he is entitled to medical treatment for the injuries he sustained as a result of the April 2 and April 7 incidents.

Mr. Lallo alleges he notified Mr. Lucas of the April 2 injury the next day and Mr. Lucas was certainly aware of the April 7 event, as well as Mr. Lallo's medical treatment for his right arm. He also alleges he provided Mr. Lucas with the work restrictions recommended by his orthopedist on the dates he received those restrictions. Finally, Mr. Lallo asserts he provided formal notice of his right arm injury to Marion through a letter on April 30, 2015.

Mr. Lallo contends that Marion never presented him with anything in writing regarding its policy against secondary employment, and Marion never told him of such a policy until after his termination. Mr. Lallo also asserts Marion never warned or disciplined him regarding his behavior or conduct at work. Therefore, he contends Marion did not fire him for misconduct and he is entitled to temporary disability benefits.

### Marion's Contentions

Marion contends it would be premature to make a finding regarding the compensability of Mr. Lallo's alleged injury, given that an authorized treating physician has yet to evaluate him. Marion further contends that an authorized doctor cannot provide an accurate evaluation without Mr. Lallo's previous medical records. Marion contests the compensability of the April 7 incident. Marion also contends it terminated Mr. Lallo for cause, and but for his termination, it would have accommodated his restrictions. Thus, even if Mr. Lallo's injuries are found to be compensable, he is not entitled to temporary disability benefits.

### Findings of Fact and Conclusions of Law

*Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at

7

an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Factual Findings*

This Court finds that Mr. Lallo sustained an injury to his right arm on April 2, 2015. He sustained an aggravation of the April 2 injury on April 7, 2015. Mr. Lallo provided notice of his injury to Marion. Marion terminated Mr. Lallo's employment on April 30, 2015, but without sufficient grounds to establish the termination was for cause.

*Application of Law to Facts*

*Causation*

The Workers' Compensation Law defines "injury" and "personal injury" to mean an injury by accident "arising primarily out of and in the course and scope of employment . . . ." Tenn. Code Ann. § 50-6-102(13)(A) (2014). An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence[.] *Id.* An injury "arises primarily out of and in the course and scope of employment" only if it has been shown "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

The Tennessee Supreme Court has consistently held that, in order to qualify as a compensable workers' compensation claim, an injury must both "arise out of" and occur "in the course of" employment:

> The phrase "in the course of" refers to time, place, and circumstances, and "arising out of" refers to cause or origin. "[A]n injury by accident to an employee is in the course of employment if it occurred while he was performing a duty he was employed to do; and it is an injury arising out of employment if caused by a hazard incident to such employment." Generally, an injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment.

*Cloyd v. Hartco Flooring Co.,* 274 S.W.3d 638, 643 (Tenn. 2008) (quoting *Orman v.*

8

*Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991)).[2]

Marion concedes that the April 2 incident, based on the testimony of Mr. Lallo and Mr. Stadleman, meets the definition of a compensable injury, assuming medical testimony establishes a causal link between the incident and Mr. Lallo's complaints. Dr. Wilson's May 19, 2015 letter sufficiently establishes a causal connection between the injury on April 2 and Mr. Lallo's complaints: "Based on this history, the most likely scenario is that on April 2, 2015, Mr. Lallo injured his right arm, and on April 7, 2015, he aggravated that injury to the point that he has required the medical care provided." (Ex. 1 at 4.)

At this interlocutory stage of the proceedings, Mr. Lallo satisfied his burden of proof regarding the occurrence of an injury on April 2, 2015, and the Court concludes that he would likely prevail on the issue at a hearing on the merits.

Marion also argues that the April 7 incident did not arise out of Mr. Lallo's employment, thus rendering his current complaints, if causally related to the April 7 incident, non-compensable. However, Dr. Wilson opined that the April 7 incident "aggravated" the injury Mr. Lallo sustained on April 2. *Id.* The general rule is that a subsequent injury may be compensable if is the "direct and natural result" of a compensable injury. *Rogers v. Shaw*, 813 S.W.2d 397, 399-400 (Tenn. 1991). In other words, "every natural consequence that flows from the injury likewise arises out of the employment, and consequently, all the medical consequences and sequelae that flow from the primary injury are compensable." *Anderson v. Westfield Group*, 259 S.W.3d 690, 696 (Tenn. 2008).

However, this rule has its limits in that an independent intervening cause could relieve an employer from liability. *Id.* The Supreme Court in *Anderson* held that, when determining if there was an independent intervening cause, the standard used is whether the subsequent injury was due to the intentional or negligent misconduct of the employee. *Id.* at 699.

There is no evidence demonstrating that Mr. Lallo violated any workplace rules when he attempted to help Mr. Lucas; indeed, Mr. Lucas, his supervisor, expressly consented to Mr. Lallo's assistance. Furthermore, Mr. Lallo had yet to see a doctor, so there were no medical restrictions in place. The evidence fails to establish that the April 7 incident constitutes an "independent intervening cause" sufficient to relieve Marion of

---

[2] Case law pre-dating the July 1, 2014 Reform Act is not only persuasive, but also controlling, when the prior decision is based solely, or in pertinent part, on a previous version of the law which remains unchanged by the 2013 Reform Act. Therefore, in cases where the Supreme Court has addressed a causation issue not based on the remedial nature or liberal construction of the prior Act, this Court is bound by the Supreme Court's analysis. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *7 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

any additional liability for the resulting injury. Thus, Mr. Lallo would likely prevail on the issue of the compensability of the April 7 injury at a hearing on the merits.

*Notice*

In order to receive workers' compensation benefits, an employee must give written notice of the injury to his employer within thirty days of the injury unless the employer already has actual notice. Tenn. Code Ann. § 50-6-201(a)(1) (2014). While the parties may dispute when Mr. Lallo notified Mr. Lucas of the April 2 injury, Mr. Lucas certainly had actual notice within thirty days and Mr. Lucas personally witnessed the April 7 injury. Furthermore, Marion does not dispute that Mr. Lallo provided written notice of both incidents on April 30, 2015. (*See* Ex. 7.) As a result, the Court finds that Mr. Lallo would likely prevail on the issue of notice at a hearing on the merits.

*Provision of Medical Benefits*

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2014) requires an employer to provide an employee with "such medical and surgical treatment . . . made reasonably necessary by accident." In order to meet this requirement, the employer must begin by providing the employee with a panel of physicians from which the employee can choose a treating doctor. Tenn. Code Ann. § 50-6-204(a)(4)(A) (2014).

Marion provided a panel to Mr. Lallo on May 12, 2015, and Mr. Lallo chose Dr. Donald Huffman as his treating physician. (Ex. 2) However, Marion argues it should not have to schedule an appointment for Mr. Lallo to see Dr. Huffman until it completes discovery by obtaining Mr. Lallo's medical records regarding his previous shoulder and carpal tunnel surgeries. Marion cites no authority for this position, but argues the information is necessary for Dr. Huffman to render an opinion on causation. While this may be true, the Court finds that Dr. Huffman, not Marion, is in the best position to determine what information he may require before rendering his opinion. The Court further finds that requiring Mr. Lallo to wait almost three months before allowing him to see a doctor does not constitute "reasonably necessary" care as required by statute. Therefore, Marion shall schedule an appointment for Mr. Lallo to see Dr. Huffman without additional delay.

*Payment of Medical Expenses*

Mr. Lallo admitted that he did not seek approval from Marion before seeing Dr. Wilson on April 7 and Dr. Haslam on April 9 and 22, although the Court finds that Mr. Lallo notified Marion of his intent to go the doctor before each visit. Mr. Lallo further admitted he was aware of workers' compensation procedure at the time of these visits, but chose to see unauthorized physicians rather than pursue treatment through workers' compensation.

Whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654, 656 (Tenn. 1986). In *Buchanan,* the Supreme Court concluded that the statute:

> Makes it clear that the intent [of the Legislature] . . . was for the employee to certainly do no less than consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it. The opposite would seem to be against public policy.

*Id.* at 657. Mr. Lallo testified that when he sought medical treatment from Dr. Wilson and Dr. Haslam in April, he had not intended to pursue a workers' compensation claim and had not expected Marion to pay the incurred expenses through workers' compensation. Therefore, the Court finds that Marion is not obligated to pay any medical expenses incurred by Mr. Lallo before providing written notice of his injury on April 30, 2015.

*Temporary Disability Benefits*

Tennessee law provides that an employer must pay temporary disability benefits until the employee reaches maximum medical improvement so long as the employee can prove an inability to work due to a compensable injury. *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978); *See also, Gray v. Cullom Machine Tool and Dye, Inc.,* 152 S.W.3d 439 (Tenn. 2004); *Gluck Brothers, Inc. v. Coffey,* 431 S.W.2d 756 (Tenn. 1968). An employee is entitled to receive temporary partial disability benefits, pursuant to Tennessee Code Annotated section 50-6-207(2) (2014), when "the temporary disability is not total." *Stem v. Thompson Servs.,* No. M2010-01566-WC-R3-WC, 2011 Tenn. LEXIS 742, at *27 (Tenn. Workers' Comp. Panel July 26, 2011). Tennessee Code Annotated section 50-6-207(2)(A) (2014) provides that, "In all cases of temporary partial disability, the compensation shall be sixty-six and two-thirds percent (66 2/3 %) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition."

Mr. Lallo did not present any evidence that any physician has taken him completely off work. Thus, the Court finds that Mr. Lallo has never been totally disabled and is not entitled to temporary total disability benefits.

The parties agree that while Marion employed Mr. Lallo, he continued to work under the restrictions placed on his activities by Dr. Haslam with no reduction in his wage. Thus, the Court finds that Mr. Lallo is not entitled to any temporary disability benefits prior to his termination on April 30, 2015. The parties further agree that, if not for his termination on April 30, 2015, Mr. Lallo could have continued to work at full

11

wage for Marion under Dr. Haslam's restrictions. Therefore, the Court must determine whether Mr. Lallo is entitled to temporary partial disability benefits following his termination by Marion.

While the Court finds no authority that addressed the issue on point, it is analogous to those cases where the issue was whether the 1.5 times cap on permanent disability benefits should apply when the employee was terminated prior to reaching maximum medical improvement. *See Carter v. First Source Furniture Group,* 92 S.W.3d 367, 368 (Tenn. 2002) In *Carter,* the Tennessee Supreme Court held an employer should be permitted to enforce workplace rules without being penalized in a workers' compensation case. *Id.* Thus, an employee's termination for cause will preclude the employee from receiving benefits he may have otherwise been due because of his loss of employment.

In order to decide the issue, the Court must determine: "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Ingram v. Heads Up Cutting Ctr.,* No. M2012-00464-WC-R3-WC, 2013 Tenn. LEXIS 338, at *20 (Tenn. Workers' Comp. Panel April 10, 2013); *see also Durham v. Cracker Barrel Old Country Store, Inc.,* No. E2008-00708-WC-R3-WC, 2009 LEXIS 3, at *9 (Tenn. Workers' Comp. Panel Oct. 22, 2008).

The parties agree that the only reason given Mr. Lallo for his termination was that Marion "was going in a new direction" with Emergency Response, and his services were no longer required. The Separation Notice filed with the Tennessee Department of Labor and signed by Ellen Gallant, President of Marion, stated that Marion let Mr. Lallo go due to "lack of work" and cited no other reason for Mr. Lallo's separation. (Ex. 6.) Nevertheless, Marion provided testimony that the real reasons it terminated Mr. Lallo were his refusal to follow his supervisors' instructions and his involvement with logging in violation of Marion's policy against secondary employment.

Mr. Lucas testified he had personally witnessed Mr. Lallo's insubordination in that he would "do things his own way" and that several other supervisors refused to work with Mr. Lallo. However, he provided no specific examples of insubordination and no other supervisors actually testified that they had difficulty working with Mr. Lallo. Furthermore, Mr. Lucas admitted that Marion never disciplined Mr. Lallo for insubordination, and in fact, Marion never even warned or admonished Mr. Lallo that his conduct could lead to disciplinary action. Similarly, Mr. Gallant provided no examples of insubordination during his testimony. Mr. Lallo testified that he felt he had been doing a good job for Marion and had received praise from Ms. Gallant in the past for his work performance.

12

With regard to logging, Mr. Lallo testified that Marion never told him that secondary employment or "moonlighting" was against company policy. Mr. Lallo testified he never signed, or even saw, any employment agreement outlining this policy. Marion did not produce an employment agreement with Mr. Lallo's signature on it. Mr. Lucas admitted he did not tell Mr. Lallo that Marion prohibited secondary employment when he talked with him about logging. Indeed, Mr. Lucas testified that he himself was unaware of the policy at the time he talked with Mr. Lallo. Mr. Gallant testified that all of Marion's employees were aware of its policy against moonlighting; however, he could not recall actually discussing the policy with Mr. Lallo. In addition, Mr. Lallo testified that he witnessed two other Marion employees who appeared to be openly engaged in secondary employment with no apparent repercussions.

Furthermore, Mr. Lallo testified he did not actually engage in logging while working with Marion, but only received a referral fee for arranging a logging job for another. Mr. Lucas testified that, when he casually asked Mr. Lallo if he was logging again, Mr. Lallo told him he had been "running" a logging crew over the weekend. However, given the casual nature of the conversation, this statement is not necessarily inconsistent with Mr. Lallo's testimony that he received money from a logging operation, but it was only for providing the referral.

Thus, the Court finds that Marion failed to establish that Mr. Lallo's actions with regard to his alleged insubordination qualified as misconduct under established or ordinary workplace rules and/or expectations. The Court also finds that Marion failed to establish Mr. Lallo's involvement with logging, even assuming active involvement, qualified as a violation of ordinary workplace rules and/or expectations sufficient to justify Mr. Lallo's termination for cause. As a result, Mr. Lallo's termination does not preclude his receipt of temporary disability benefits. *See Durham, supra,* at 9.

However, Mr. Lallo is still required to prove he was restricted from working after his termination in order to qualify for temporary partial disability benefits. *Simpson, supra,* at 955. Mr. Lallo worked at full wages until Marion terminated him on April 30, so Marion would not owe any temporary partial disability benefits before May 1, 2015.

The only evidence regarding restrictions for the period following Mr. Lallo's termination was Dr. Haslam's April 22 note. The note placed a two-pound lifting restriction for Mr. Lallo's right arm for two weeks and then stated Mr. Lallo could "progress to lifting as tolerated." Therefore, Dr. Haslam placed Mr. Lallo on specific restrictions for no more than two weeks, and Mr. Lallo worked for eight days following this restriction. As a result, the evidence available only establishes six days of disability. Pursuant to Tennessee Code Annotated section 50-6-205(a) (2014), compensation is only due if the disability extends past seven days. Therefore, Mr. Lallo has yet to establish he is entitled to any temporary partial disability benefits and the Court must deny his request for these benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Lallo's injuries shall be paid and Marion or its workers' compensation carrier shall provide Mr. Lallo with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204 (2014), to be initiated by scheduling an appointment for Mr. Lallo with Dr. Donald Huffman without additional delay. Mr. Lallo or medical providers shall furnish medical bills to Marion or its workers' compensation carrier.

2. Mr. Lallo's request for payment of medical expenses already incurred is denied. At this time, Mr. Lallo has not come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits on this issue.

3. Mr. Lallo's request for temporary disability benefits is denied. At this time, Mr. Lallo has not come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits on this issue.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 7ᵗʰ day of August, 2015.**

**Judge Robert Durham**
**Court of Workers' Compensation Claims**

14

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 7th day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Mark Rassas | | | X | rassaslaw@aol.com |
| Alex B. Morrison | | | X | ABMorrison@mijs.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov