**Glenn WENTZELL**

v.

**WEBSTER RUBBER COMPANY and Travelers Indemnity Company.**

Supreme Judicial Court of Maine.

March 1, 1979.

---

Linnell, Choate & Webber by Jon S. Oxman, Auburn (orally), for plaintiff.

Norman & Hanson by Robert F. Hanson, Portland (orally), for defendant.

Before McKUSICK, C. J., POMEROY, ARCHIBALD, DELAHANTY and GODFREY, JJ., and DUFRESNE, A. R. J.

DUFRESNE, A. R. J.[1]

Appellant-employee Glenn Wentzell appeals from a pro forma decree of the Superior Court affirming an order of the Industrial Accident Commission[2] dismissing employee's petition for award of compensation. The sole issue on appeal is whether the commissioner erred as a matter of law in holding that the employee's injury did not arise (1) out of and (2) in the course of his employment. We sustain the appeal.

## FACTS

The commissioner made the following findings of fact which neither party contests:

Wentzell worked as a molder for appellee-employer Webster Rubber Company at employer's plant in Sabattus, Maine. The plant machinery consisted in part of a number of "heel presses" which flatten out rub-

---

1. Sitting by assignment.

2. The name of the Industrial Accident Commission was changed to Workers' Compensation Commission by P.L.1978, c. 612.

ber and mold it into square forms. The rubber squares must then be trimmed by hand. Each machine was operated by a different employee independently responsible for obtaining his own supplies and molding and trimming the slabs produced by his machine.

Wentzell worked the third shift, which was formally scheduled to begin at 11:00 p. m. On December 19, 1977, Wentzell punched in for his job at the plant between 10:15 and 10:30 p. m. "in accordance with his usual practice as to time of reporting." Before reaching his machine, Wentzell stopped to talk to his brother and father who also worked at the plant. While the three men were talking, Robert Crowley, who worked Wentzell's machine on the second shift, approached and ordered Wentzell to trim sheets that Crowley had molded. Wentzell refused. Greatly angered, Crowley left but then returned, called Wentzell "several names," threatened to have Wentzell fired, and then struck the appellant in the jaw. Approximately ten minutes elapsed between the time Crowley ordered Wentzell to trim the sheets and the assault. The commissioner expressly found that the appellant "neither provoked [the attack] nor responded with (sic) verbal abuse by Crowley."

On January 9, 1978, Wentzell filed a petition for award of compensation for injuries stemming from the assault by Crowley. After a hearing which consisted solely of testimony by Wentzell and the submission of a doctor's report, the commissioner denied Wentzell's claim on grounds that the injury did not arise (1) out of and (2) in the course of Wentzell's employment. Each ground for the decree will be examined separately.

I. *Whether the Employee's Injury Arose Out of His Employment*

■ The commissioner rested his conclusion that Wentzell's injury did not arise out of his employment on three grounds: (1) "Crowley was not a supervisor and had no authority to issue the orders"; (2) "there was nothing to indicate that this was a

hazard connected with business or any evidence that it had ever occurred before"; and (3) there was a ten-minute "cooling off" period between the argument and the assault that transformed the work-related quarrel into a personal one. The appellant-employee argues that these factors do not, as a matter of law, support the commissioner's conclusion.

*Ramsdell v. Naples,* Me., 393 A.2d 1352 (1978), decided after the date of the commissioner's decree in the instant case, is dispositive of this issue. Ramsdell worked as a meat cutter in a small room along with one Crawford. On the day of the incident, Ramsdell threw a piece of meat against the wall of the room, an action which offended Crawford since Crawford was responsible for cleaning the room. After a verbal exchange, Crawford drove a boning knife through Ramsdell's hand. In affirming the commissioner's conclusion that Ramsdell's injury arose out of his employment, we cited Larson's treatise for the proposition that "it is universally agreed that if the assault grew out of an argument over the performance of the work . . . the assault is compensable." 1 Larson, *Workmen's Compensation Law* § 11.12, cited in *Ramsdell v. Naples,* supra at 1355. See also *Wolfe v. Shorey,* Me., 290 A.2d 892 (1972).

In the instant case, there is no doubt that the assault arose out of an argument over the performance of work. The dispute centered on the question of which employee would trim the rubber sheets, an important part of each employee's job. As the commissioner found, there was no evidence of prior animosity between Wentzell and Crowley. Moreover, since their shifts were back to back, the dispute arose at the only time the employees could discuss the allocation of responsibility to trim the sheets. The fact that Crowley was not in a supervisory capacity is irrelevant.

Finally, we reject the commissioner's conclusion that the ten-minute period between the argument and the assault transformed the dispute from a quarrel having its origin in work to a personal vendetta between the co-employees. While recognizing that some

jurisdictions have held that a cooling off period between a work-related dispute and the actual attack may relieve an employer of liability, see 1 Larson, supra at § 11.13 n. 56, the critical element is not the length of the cooling off period but what occurred during that period. Id. at § 11.13. In the instant case, there was no intervening quarrel between the employees that severed the link between the argument over the performance of work and the assault. The commissioner erred in concluding that Wentzell's injury did not arise out of his employment.

## II. Whether the Injury Arose in the Course of Employment

■ In order to obtain compensation, Wentzell must show not only that his injury arose out of his employment but also that it was "in the course of his employment." *Westman's Case*, 118 Me. 133, 139–140, 106 A. 532, 537 (1919); *Johnson v. Highway Commission*, 125 Me. 443, 444, 134 A. 564 (1926). The commissioner advanced two reasons in support of his conclusion that Wentzell's injury did not arise in the course of his employment. The commissioner found that at the time of the assault, Wentzell (1) "was engaged in conversation with his brother and father which had no relationship to his work" and (2) "had not entered upon his work having reported earlier than he was obligated to." The first rationale is insufficient to support the commissioner's conclusion. Non-work-related conversations are a normal incident of the work place. The subject matter of a discussion between employees does not, in and of itself, remove the employees from the protections afforded by the Workers' Compensation Act.

Nor is the second rationale adequate, in and of itself, to support the commissioner's conclusion that Wentzell's injury did not arise in the course of employment. Certainly, an employer is not an insurer of his employee's safety whenever the employee chooses to enter the work place. But "[w]e have long recognized that an employee going to or departing from his regular work-shift is *within the course of his employment* while on the employer's premises or a way maintained by the employer to provide ingress or egress." *Rioux v. Franklin County Memorial Hospital*, Me., 390 A.2d 1059, 1060 (1978) (emphasis in original). As we stated in *Roberts' Case*, 124 Me. 129, 131, 126 A. 573, 574 (1924), " 'the course of employment' does not begin and end with the actual work he was employed to do, but covers the period between his entering his employer's premises a reasonable time before beginning his actual work . . . ."

Thus, having found that Wentzell had "reported earlier than he was obligated to," the commissioner should have proceeded to determine if the employee's time of arrival was nonetheless reasonable in light of the time Wentzell was actually to begin work. This entails finding the employee's time of arrival and the time that the employee actually was to begin work and then drawing a legal conclusion as to whether the time of arrival was reasonable.

■ Ordinarily, it might be necessary to remand to the commissioner to make these determinations. However, where the essential facts are undisputed and the legal inference to be drawn from those facts is beyond doubt, considerations of judicial economy and the interest of the parties in obtaining a speedy resolution of their dispute dictates that the Law Court make the final determination without remanding to the commissioner. *Beaulieu v. Francis Bernard, Inc.*, Me., 393 A.2d 163 (1978).

The instant case is amenable to final disposition on this appeal. The commissioner expressly found that Wentzell arrived for work between 10:15 and 10:30 p. m. The commissioner did not expressly find the time Wentzell was to begin work. However, the employee testified that although his shift was formally scheduled to begin at 11:00 p. m., he "would start at ten-thirty." Wentzell explained that the previous shift would usually "knock off, stop work at ten-thirty so they can wash up and get ready to go." The employer did not rebut this testimony. The conclusion that Wentzell ordinarily began his shift a half-hour early is

bolstered by the commissioner's express finding that Wentzell punched in for his job on the day of the incident "between 10:15 p. m. and 10:30 p. m., in accordance with his usual practice as to time of reporting." If Wentzell did not actually begin work until 11:00 p. m., it is highly unlikely that he would have made a usual practice of reporting 30–45 minutes early.

In short, the record provides firm support for a finding that Wentzell was actually to begin work at 10:30 p. m., a half hour before his shift was formally scheduled to begin. Given this fact, it is clear that Wentzell's arrival at the plant between 10:15 and 10:30 p. m. was not unreasonable.

Accordingly, we hold that Wentzell's injury arose out of and in the course of his employment. We remand to the commissioner to determine the amount of compensation to which the employee is entitled.

The entry will be

Appeal sustained.

Pro forma decree of the Superior Court vacated.

Remanded to the Workers' Compensation Commission for further proceedings consistent with this opinion; and

It is further ordered that the employer pay to the employee $550 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

WERNICK and NICHOLS, JJ., did not sit.