Betty Jean CARTER, Plaintiff–
Appellant,

v.

VOLUNTEER APPAREL, INC.,
Defendant–Appellee.

Supreme Court of Tennessee,
at Knoxville.

April 20, 1992.

Shannon D. Faulkner, III, Milligan and Gilbert, Knoxville, for plaintiff-appellant.

David E. Smith, Hodges, Doughty & Carson, Knoxville, for defendant-appellee.

OPINION

DROWOTA, Justice.

The primary issue in this workers' compensation appeal is whether an injury, sus-

tained by Plaintiff-employee on her employer's premises prior to the time work began, is compensable. Plaintiff's injury occurred in the break area of Defendant's plant and the Chancellor found that her injury was not compensable because it did not occur within a reasonable time prior to work. Plaintiff appeals.

## THE FACTS

Plaintiff–Appellant, Betty Jean Carter, is 52 years of age and all her adult work life has been spent operating sewing machines in apparel plants. In 1986 she began working for the Defendant, Volunteer Apparel, Inc. Plaintiff testified that on the day of the accident, December 15, 1988, as was her usual custom, she parked in the rear of the Defendant's premises, came through the back of the building, and walked through the sewing work area to the break area. The sewing area was in a large room which also contained the break area. In the break area, there were coffee machines, juice machines, and coke machines. From the break area, Plaintiff could see the time clock and the sewing machine where she worked. The time of Plaintiff's arrival this particular morning is in dispute. Plaintiff testified that she arrived at the designated break area at 7:10 a.m. and that she was to clock in and begin work at 7:30. Plaintiff testified that it was an everyday occurrence for employees to be in the break area prior to clocking in and beginning work. When Plaintiff arrived at the break area, she had with her a crocheted doll which she was bringing to a co-employee. As she was walking to a table in the break area to lay the doll down, she slipped and fell. Plaintiff thinks that coffee on the floor caused her to fall. She testified that she went completely to the floor, twisted her back, and had immediate pain in her leg and back. A supervisor picked her up and another employee took her to the hospital emergency room.

Defendant presented witnesses who testified that Plaintiff's fall occurred between 6:30 and 6:40 a.m. The plant manager, who arrived at work at 6:15 a.m., testified that Plaintiff had fallen at 6:30 a.m. The supervisor, who filled out the accident re-

port, testified that her report showed that the accident occurred at 6:40 a.m.

## FINDINGS OF THE TRIAL COURT

The Chancellor found that in order to begin work at 7:30 a.m., an employee would necessarily arrive sometime prior to that time and that it was Plaintiff's custom to arrive early and drink coffee and smoke a cigarette with fellow employees. This practice was known to and permitted by the Company. Supervisory employees would normally come in around 6:15 to 6:30 a.m. The Chancellor noted that the time of Plaintiff's fall was in dispute, Plaintiff testifying that the fall occurred after 7 a.m., and defense witnesses testifying that the fall occurred about 6:30 a.m. The Chancellor accepted a report by a supervisor that showed the time of the accident being 6:40 a.m.

Before addressing the critical issue of liability, the Chancellor found that, assuming liability on the part of the employer, Plaintiff would be entitled to medical expenses of $3,111.00, to temporary total benefits up to March 1, 1989, and to 40 percent permanent disability to the body as a whole.

The Chancellor, referring to *Lollar v. Wal–Mart Stores, Inc.,* 767 S.W.2d 143 (Tenn.1989), stated that the issue is "whether or not the employee's injury occurred during a reasonable time on the employer's premises." As mentioned earlier, the Chancellor observed that in order to begin work at 7:30 a.m., it would be necessary to arrive prior to that time. The Chancellor noted that some employees came to work early and waited in the break area, perhaps having coffee and a cigarette, until work started. The court, however, found that the evidence did not establish that Plaintiff was on her employer's premises a reasonable time prior to work and he accordingly found no liability and dismissed Plaintiff's suit.

## OUR CONCLUSIONS AND FINDINGS

The standard of review by this Court of the findings of the trial judge is *de novo,* accompanied by a presumption of correctness for those findings, unless the evidence

preponderates otherwise. T.C.A. § 50–6–225(e). "This standard of review differs from that previously provided and requires this Court to weigh in more depth the factual findings and conclusions of trial judges in workers' compensation cases." *Humphrey v. Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn.1987).

In *Lollar v. Wal–Mart Stores, Inc.*, supra, at 150, we cited with approval a statement from *Dupper v. Liberty Mut. Ins. Co.*, 105 N.M. 503, 506, 734 P.2d 743, 746 (1987):

> ... by adoption of the premises rule, we simply recognize that the "course of employment" includes not only the time for which the employee is actually paid but also *a reasonable time* during which the employee is necessarily on the employer's premises while passing to or from the place where the work is actually done. (Emphasis added.)

■ We are of the opinion that injuries occurring on the premises at a reasonable time before work begins are "in the course of employment" even though this period is technically outside the regular hours of employment. Professor Larson lists four situations in which the course of employment goes beyond an employee's fixed hours of work: the time spent going and coming on the premises; an interval before working hours while waiting to begin or making preparations, and a similar interval after hours; regular unpaid rest periods taken on the premises; and unpaid lunch hours on the premises. 1A Larson, *Workmen's Compensation Law*, § 21.21(a) (1990). It is obvious that "in the course of employment" for employees having a fixed time and place to work, embraces a reasonable interval before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts. *Id.* at § 21.60(a).

■ In the case before us the employer had acquiesced in the custom of what we will refer to as pre-work breaks. What constitutes a reasonable interval depends not only on the length of time involved but also on the circumstances occasioning the interval and the nature of the employee's activity. For examples of pre-work cases in other jurisdictions defining reasonable activities and periods of time, see the cases collected below.[1]

■ In this era of 8 to 12 hour work days, an employee's recovery is not limited

---

1. *Winn Dixie Stores, Inc. v. Akin*, 533 So.2d 829 (Fla.App. 4 Dist.1988) (The employee arrived at work at 3:30 a.m. prior to a 4:00 a.m. starting time. He was struck and killed by a second employee in the grocery store parking lot. The employee had not yet clocked in and, under company rules, was not deemed to be at work until he did. The court held that the employee's injuries occurred in the *course of employment* because they were sustained by him on his employer's premises while preparing to start the days' work. The court further held that it is not unreasonable to arrive at work 30 minutes early in order to arrive on time. Workers' compensation was the employee's exclusive remedy, and his suit against the employer and the second employee for negligence was barred.), *review denied,* 542 So.2d 988 (Fla.1989); *Johns v. State, Dept. of Health and Rehab.,* 485 So.2d 857 (Fla.App. 1 Dist.1986) (The employee usually arrived at work about 20 to 30 minutes early. While waiting for her shift at Florida State Hospital, she was assaulted by one of the patients. The court held that 20 to 30 minutes prior to her shift was a "reasonable interval" embraced within her course of employment.), *review denied,* 492 So.2d 1333 (Fla.1986); *Christman v. Industrial Comm'n,* 159 Ill.App.3d 479, 111 Ill.Dec. 415, 512 N.E.2d 804 (1987) (The employee, a union ironworker, arrived for his 8 a.m. shift at approximately 7 a.m. He went to the ironworker's "change shack" located on the grounds of the plant about 700 feet from the job site. The shack was the place where ironworkers changed clothes, washed, took breaks, and waited for their shift to begin. Upon entering the shack, the employee joined a card game with fellow ironworkers. At 7:35 a.m., he arose from the bench where he was sitting and went to a water cooler to get a drink. On his way back to the bench, he slipped on the floor, which was wet, fell across the bench, and fractured a lumbar vertebrae. The court held that plaintiff's injury arose out of and in the course of his employment.); *Serean v. Kaiser Aluminum & Chem. Corp.,* 277 So.2d 732 (La.Ct.App.1973) (The employee arrived at work at 6:15 a.m. for his 7:00 a.m. shift. As he got out of his car in the employer's parking lot, he stepped on a bottle, causing him to fall and injure his back. The court held his injuries compensable, particularly in view of the employer's failure to object to the employee's early arrival at work over a ten-year period.); *Wentzell v. Webster Rubber Co.,* 398 A.2d 393 (Me.1979) (The employee arrived at work between 30 and 45 minutes prior to the start of his shift. The employee was struck in the jaw by a fellow employee. The court held

to the time spent at one's work station. Professor Larson states that employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred or unless the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment. 1A Larson, *Workmen's Compensation Law,* § 21 (1990). Activities termed by Larson as "personal comfort activities" are generally regarded as necessities in the work place. These include such incidental acts as eating, drinking, smoking, seeking toilet facilities,[2] and seeking fresh air, coolness or warmth. *Id.* at § 21.10–21.50 (1990). These activities are generally found to be sufficiently related to employment to be in the course of employment.

■ The Defendant avers that Plaintiff was doing nothing to benefit her employer and that the break area was being provided by the Company for the Plaintiff's own personal convenience. We think it significant that the employer did provide a break area for its employees and the employer acquiesced in and created the custom[3] of pre-work breaks. Our Workers' Compensation Act does not expressly state that the employee must, at the time of the injury, have been benefiting his or her employer;

---

[2] that the injury arose out of the employment since the dispute was work related and never personal, and in the course of employment since the evidence showed that the claimant generally began working 30 minutes before the official start of his shift and therefore was on the employer's premises a reasonable time before beginning his actual work.); *Jones v. Bendix Corp.,* 407 S.W.2d 650 (Mo.Ct.App.1966) (The employee arrived at work early, and was injured while drinking coffee in the company cafeteria before her hours of work began. The court held that the drinking of coffee prior to work was a reasonable incident to her work and recovery was allowed.); *Fashion Hosiery Shops v. Workmen's Comp. App. Bd.,* 55 Pa.Commw. 465, 423 A.2d 792 (1980) (The court held that the employee's injury occurred in the course and scope of her employment when she was injured on her way to work when she slipped on an icy floor. The accident occurred one-half hour before her work period began and the court found this was within a reasonable time.); *Lima v. William H. Haskell Mfg. Co.,* 100 R.I. 312, 215 A.2d 229 (1965) (The employee suffered a knee injury when he stepped on a bolt while in the process of placing his lunch on a table near his work station, before beginning work. The accident occurred at 6:40 a.m., although the work day did not begin until 7 a.m. The court, in remanding the case, held that compensation was payable if it could be shown that the injury occurred at a place where the employee might reasonably be expected to be.); *Montanaro v. Guild Metal Prods., Inc.,* 108 R.I. 362, 275 A.2d 634 (R.I.1971) (The employee customarily arrived at work one hour early, due to her transportation arrangements. She would spend the time before work drinking coffee and talking with other employees. On the day of her injury, she slipped and fell on some ice as she was entering the employer's premises. The court held that the accident had occurred within a reasonable interval before the commencement of working hours, and therefore the accident was compensable); *Jones v. Colonial Williamsburg Foundation,* 8 Va.App. 432, 382 S.E.2d 300 (Va.App.1989), *on reh'g. en banc,* 10 Va.App. 521, 392 S.E.2d 848 (Va.App.1990) (Prior to work an employee took her trash to a receptacle located behind the employer's premises. After throwing the trash into the dumpster, she slipped on a wet step and injured her leg. She had not yet clocked in for work. The employer had provided the trash receptacle, and while it was not normally within Ms. Jones's routine to place trash there, she was in an appropriate place at the time of her injury. The court held that an employee is ordinarily entitled to benefits if the injury occurs on the premises and the activity leading to the injury is the type which might be expected to be carried out by the employee, even if such activity was of a personal nature.).

2. In both *Maresco v. Rozzi,* 162 A.D.2d 534, 556 N.Y.S.2d 731 (1990) and *Edwards v. Liberty Mut. Ins. Co.,* 130 Ga.App. 23, 202 S.E.2d 208 (1973), the employees were injured while using the rest room and the courts found this activity to be in the course of employment.

3. In *Seiber v. Moog Automotive, Inc.,* 773 S.W.2d 161 (Mo.Ct.App.1989), the employee was injured while playing basketball on a break. The court held that this recreational activity on the employer's premises was compensable where the employer had acquiesced to the activity to the extent that the activity had become a regular incident of the employment. However, in *Ward v. Mid–South Home Service,* 769 S.W.2d 486 (Tenn.1989), where there was no showing that playing basketball on a break was in any way a customary or usual incident of the employment, recovery was not allowed. A different result may have been reached if the activity had become a regular incident of employment because of custom or acquiescence.

it merely states that the injury must be one "arising out of and in the course of employment." T.C.A. § 50–6–102(a)(5) (1991). Therefore, if Plaintiff's activity, beneficial or not, was a part of her employment, either because of its general nature or because of the particular customs or practices in Defendant's plant, the statute is satisfied. *Accord* 1A Larson, *Workmens' Compensation Law*, § 20.20 (1990).

 We conclude that "in the course of employment," for plant employees having a fixed time to clock in, embraces a reasonable interval before and after actual working hours while the employee is on the premises engaged in preparatory or incidental acts. Volunteer Apparel had knowledge of its employees' arriving early and acquiesced in their before work coffee/social breaks. The issue thus becomes whether Plaintiff's early arrival was reasonable in point of time. We are of the opinion that the early arrival was reasonable under the circumstances of this case. Plaintiff was in an area designated by her employer as a break area and her acts and conduct could not be said to be so unusual or unreasonable as not to be considered an incident of her employment. Having found that Defendant acquiesced in the custom of its employees having pre-work breaks to the point that it became a regular incident of Plaintiff's employment, and that Plaintiff's arrival on the day in question was reasonable under the circumstances, we reverse the Chancellor's findings with regards to liability. We concur with the Chancellor's conclusions that Mrs. Carter is 40 percent permanently disabled to the body as a whole and that she is entitled to medical expenses in the sum of $3,111.00. Therefore, this cause shall be remanded to the trial court for entry of judgment in the above amounts. The costs of this cause shall be taxed to Defendant, Volunteer Apparel, Inc.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.