**FILED**

**October 31, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 12:31 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MURFREESBORO

| | | |
|---|---|---|
| Thomas Wayne Jacobs, | ) | Docket No.: 2017-05–0132 |
| | ) | |
| v. | ) | |
| | ) | |
| Bridgestone Americas, | ) | State File No.: 5629-2017 |
| | ) | |
| and | ) | |
| | ) | |
| United Steelworkers Local 1055L | ) | Judge Robert Durham |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

This case came before the undersigned Workers' Compensation Judge on October 19, 2017, on Mr. Jacob's Request for Expedited Hearing. Mr. Jacobs asked the Court to determine whether he sustained a compensable injury on January 5, 2017, and if so, whether Bridgestone or United Steelworkers Local 1055L is obligated to pay benefits.

The Court holds Mr. Jacobs is likely to prove he sustained a burn injury on January 5 that arose out of and in the course and scope of his employment with Bridgestone. Thus, Bridgestone must pay all medical expenses and temporary disability benefits due as a result of the injury.

### History of Claim

Mr. Jacobs, Joanne Watson Kennedy with Bridgestone human resources, and Rodney Phillips and Marcus Hargrove, officers of Local 1055L, provided undisputed testimony about Mr. Jacobs' employment relationship with Bridgestone and the union.

Mr. Jacobs began working for Bridgestone in 1994. The members of Local 1055L at Bridgestone elected Mr. Jacobs to a three-year term as a Time Study Representative (TSR) in 2015. Bridgestone terminated the previous TSR for violation of its Drug-Free Workplace policy. As TSR, Mr. Jacobs analyzed Bridgestone's proposed job changes to

1

determine if they warranted pay modifications.

Mr. Jacobs' TSR responsibilities required him to work from Local 1055L's union hall a mile from Bridgestone facilities. The Union owned and maintained the hall. Bridgestone bore no responsibility for the hall or its grounds.

Mr. Jacobs did not work at the plant unless his duties as a TSR required him to be there. No one at Bridgestone supervised his daily activities, including when he reported to and from work. Instead, he turned time cards to the union bookkeeper with the hours he worked each week. None of the union officers had supervisors, although Mr. Jacobs testified he occasionally performed maintenance and improvements to the hall and its grounds at the request of the union president.

Bridgestone paid Mr. Jacobs the same wages whether he worked as a TSR or a tire-builder. Bridgestone took out all applicable withholdings and provided Mr. Jacobs with a W-2 at the end of each year. Bridgestone provided full benefits to Mr. Jacobs, and he continued to build seniority during his tenure as TSR. Should Mr. Jacobs resign his union office or lose the next election, he would return to work at the plant with full seniority and benefits. Mr. Jacobs received no compensation or benefits from Local 1055L.

Bridgestone introduced the Collective Bargaining Agreement between Bridgestone and Local 1055L to bolster its argument that Mr. Jacobs was not in the course and scope of his employment at the time of his injury. The CBA included a provision that union officials could take a leave of absence during their term of office. However, Ms. Kennedy testified that none of the current officers chose to do so. Ms. Kennedy acknowledged that she considered Mr. Jacobs a Bridgestone employee at the time of his injury and that she still considers him an employee.

The CBA also stated workers' compensation law covers any union representative at a company-sponsored conference or labor/management meeting. Ms. Kennedy testified the union had workers' compensation insurance at one time but did not have it when the current CBA went into effect in 2013.

While evidence regarding Mr. Jacobs' work status was essentially undisputed, testimony about the accident varied. Mr. Jacobs, Mr. Phillips, and Mr. Hargrove testified that they had a late lunch on January 5 and did not get back to the hall until approximately 2:00 p.m. Mr. Jacobs stated that he went into his office to check on an email from the NLRB; when he saw it had not arrived, he went outside to smoke a cigar while he waited for the email.

The Union permitted smoking outside the hall. Benches were set up around a fifty-five gallon barrel near a picnic table. The officers gathered there to smoke during

2

breaks. Occasionally, they started a fire in the barrel, using brush or firewood brought from home, to stay warm while they smoked. The union previously built fires in the barrel outside Bridgestone's gates during strikes or protests, and Mr. Jacobs had cut holes in it for ventilation.

To start the fire, the officers occasionally poured gasoline on it from a five-gallon plastic container stored fifteen or twenty feet from the barrel. A few months before Mr. Jacobs' accident, an officer attempted to pour gas from a cup onto the fire, but the cup ignited and caught his sleeve on fire. No one from the union hall reported the incident to Bridgestone, and they continued to use gasoline on the fire, although Mr. Jacobs testified he stopped doing so after the cup incident.

Mr. Jacobs testified that when he went outside on January 5, he first looked into the barrel to see if there was a fire. He then turned to get his cigars from the picnic table where he left them that morning. At that point, he partially turned back toward the barrel and saw the container explode in Mr. Phillips' hands. He denied knowing Mr. Phillips was pouring gas onto the fire. Mr. Jacobs asserted the explosion knocked him to the ground. Mr. Jacobs suffered severe burns to his hands, face, neck, and side. He spent eight days at Vanderbilt hospital and received extensive medical treatment for his burns, including multiple skin grafts and psychological counseling.

Mr. Phillips testified differently. He admitted pouring gas on the fire; however, he stated that Mr. Jacobs was standing less than two feet from the barrel smoking a cigar when he did so. Mr. Phillips also testified that Mr. Jacobs heard him say he was going to pour gas onto the fire but did not ask him to stop.

In addition, Mr. Phillips also differed with Mr. Jacobs regarding Mr. Jacobs' work shift on January 5. Mr. Jacobs testified that he arrived at the union hall around 6:30 a.m., despite the fact that his time cards regularly indicated he worked from 6:00 a.m. until 2:00 p.m. Mr. Jacobs, Mr. Phillips, and Mr. Hargrove asserted the time their actual workday began and ended varied from day to day, depending on their schedules. Mr. Jacobs testified he remembered he had been coming in later to take grievance calls after the shift at the plant ended.

However, Mr. Phillips stated that he thought Mr. Jacobs came to work immediately after him that day at approximately 5:45 a.m. Mr. Phillips also testified that at the time he poured gas on the fire, he had finished his workday and was under the impression Mr. Jacobs had finished his as well. Nevertheless, on cross-examination, Mr. Phillips admitted that he could not say for sure when Mr. Phillips came to work on that particular day nor could he say whether Mr. Jacobs planned to continue work after he finished smoking.

None of the officers admitted that they were aware of a "hot work" policy that

required certification before starting a fire. However, they conceded that they were familiar with Bridgestone's smoking area and never saw open fires in use.

## Stipulations

The parties stipulated that Mr. Jacobs' medical expenses to date for treatment of his injury, including psychological counseling, were reasonable and necessary. The parties further stipulated to a compensation rate of $691.96. They agreed that Bridgestone paid $462.24 per week in short-term disability benefits since the injury for which it was entitled to an offset if found liable for workers' compensation benefits. Finally, they agreed that Mr. Jacobs had not reached maximum medical improvement and remained off work as a result of his injury.

## Findings of Fact and Conclusions of Law

Mr. Jacobs has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, he must only come forward with sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits in order to meet his burden. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Bridgestone's argument is essentially two-pronged: (1) At the time of his injury, Mr. Jacobs worked for Local Union 1055L and not Bridgestone; and (2) that even if he were Bridgestone's employee, the injury did not occur while he was in the course of his employment. The Court will address each issue in turn.

First, no one doubts that at the time of his injury, Bridgestone employed Mr. Jacobs. Bridgestone paid all of Mr. Jacobs' wages; he retained all benefits afforded Bridgestone employees, including seniority; and Mr. Jacobs considered himself a Bridgestone employee. He did not take a leave of absence upon becoming a union official. Bridgestone required union officers to abide by Bridgestone policies and procedures, and in fact terminated the previous TSR for violation of its Drug-Free Workplace policy. Finally, Ms. Kennedy, unequivocally described Mr. Jacobs as a Bridgestone employee. Bridgestone did not provide any contrary evidence. Thus, the Court holds Mr. Jacobs was a Bridgestone employee on January 5, 2017.

However, that does not end the inquiry. Bridgestone argued that, even if Mr. Jacobs were a Bridgestone employee, he only performed duties on behalf of the union since his election in 2015. As a result, his injury could not have occurred in the "course and scope" of his employment with Bridgestone as required by Tennessee Code Annotated section 50-6-102(14) (2017).

4

The Supreme Court squarely addressed this issue in *Jones v. Hartford Accident & Indem. Co.*, 811 S.W.2d 516 (Tenn. 1991). In *Jones*, the employee served as a union chairperson. If she engaged in union business, her employer required her to clock out of "company time" and clock back in on "union time." On the day of her injury, the employee engaged in intense management/labor discussions while on "union time." At one point, the company owner berated her fiercely, causing her to pass out and subsequently suffer severe psychological issues. The employer argued that since the employee was acting solely in the "course of her liaison duties as union chairperson," her injury could not have occurred in the course of her employment with employer. *Id.* at 518.

The Supreme Court disagreed and found the employee's condition compensable. The Court adopted the "mutual benefit" test when determining if an employee injured while engaged in union activity is entitled to workers' compensation benefits from the employer. While acknowledging that it does not apply to all union activities, the Court generally held that an employee injured while engaged in the duties of a union official is also injured in the course of employment with his employer, in that the activity was of "mutual benefit" to the employer. *Id.* at 520.

Thus, using these principles, if Mr. Jacobs' injury occurred while he was in the course of his duties as a TSR for Union 1055L, Bridgestone would remain liable for workers' compensation benefits.

After reviewing the evidence, the Court finds Mr. Jacobs was in the course of his duties at the time of his injury. Mr. Jacobs suffered his injury while on a smoke break. With regard to whether these types of injuries occur in the course of employment, the Supreme Court ascribes to the "personal-comfort" doctrine:

> [E]mployees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred or unless the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment.

*Carter v. Volunteer Apparel, Inc.*, 833 S.W.2d 492, 495 (Tenn. 1992).

Here, several of the union officers regularly engaged in smoke breaks throughout the day. While the union prohibited smoking in the hall, it did not do so outside. The union hall provided an area that appeared designed to allow members to gather while smoking. Further, Bridgestone designated a smoking area at its plant and allowed its employees to take smoke breaks there.

5

Admittedly, Bridgestone did not have barrels with fires in them at its on-site smoking area. However, Bridgestone cited no evidence prohibiting their use to keep employees warm while smoking. Bridgestone questioned the union officers about a "hot work" policy. However, Bridgestone did not provide any evidence that such a policy existed or that it communicated it to employees. Under the circumstances, the Court finds the personal-comfort doctrine applicable and the smoke break did not make the injury outside the course of his employment.

As to the use of gasoline to maintain the fire in the barrel, while it may have been reckless and even foolhardy, Bridgestone cited no evidence of a policy or instruction prohibiting this conduct. Further, while the Court finds it difficult to believe that Mr. Jacobs was not at least aware that Mr. Phillips was adding gas to the fire, the fact remains that he was not the one who actually did it. Without these elements, Bridgestone cannot prove willful misconduct as a defense. *See Johnson v. Wal-Mart Assocs., Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 18, at *15 (July 2, 2015).

Bridgestone also pointed to evidence indicating Mr. Jacobs may have actually concluded his work-day before the explosion occurred, which could arguably make the injury non-compensable. However, all of the parties testified that while the time cards may state a work-shift of six to two, the actual time worked by each officer varied from day to day depending upon his schedule. Mr. Jacobs testified that on January 5 he came in to work around 6:30 to 6:45 and, after returning from lunch, he checked to see if he received an expected e-mail. When he saw he had not, he went outside to smoke while waiting for the e-mail. Mr. Phillips testified he thought Mr. Jacobs came in to work around 5:45 and that Mr. Jacobs had finished his shift when he came out to smoke that afternoon. But he admitted that he could not say for sure when Mr. Jacobs arrived, nor could he definitely testify that Mr. Jacobs had finished his work for the day. Given the evidence at this time, the Court finds Mr. Jacobs is likely to prove he was still working at the time the explosion occurred.

Based on these findings, the Court holds Bridgestone is obligated to pay workers' compensation benefits to Mr. Jacobs for the injuries he incurred on January 5, 2017. The Court further holds that that United Steelworkers Local 1055L is not liable for workers' compensation benefits in this matter.

Finally, Mr. Jacobs requested a 25% penalty for unpaid temporary disability benefits under Tennessee Code Annotated section 50-6-118 as well as attorneys' fees in accordance with Tennessee Code Annotated section 50-6-226(d)(1)(B). With regard to the first request, the Court refers this matter to the Bureau's Compliance unit for determination of any penalties it may deem appropriate. As to the second request, the Workers' Compensation Appeals Board encouraged consideration of attorneys' fees at the end of the claim, and the Court will heed the Appeals Board's advice at this time. *Andrews v. Yates Servs., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 35, at *7-8 (May

23, 2017).

IT IS, THEREFORE, ORDERED that:

1. Bridgestone shall pay Mr. Jacobs temporary disability benefits at the compensation rate of $691.96 from January 6, 2017, to present in the amount of $28,726.22, less any offset Bridgestone may be entitled due to payment of wages or short-term disability benefits. Bridgestone shall continue to pay temporary disability benefits until Mr. Jacobs reaches maximum medical improvement or is able to return to his employment.

2. Bridgestone shall pay all reasonable and necessary medical expenses Mr. Jacobs incurred as a result of his work-related injury, including psychological counseling and out-of-pocket prescription expenses. The physicians currently providing treatment to Mr. Jacobs shall remain his authorized physicians for any continuing care he may require. Bridgestone shall also pay all applicable mileage expenses to Mr. Jacobs.

3. United Steelworkers Local 1055L is not liable for workers' compensation benefits in this matter.

4. The Court refers this matter the Bureau's Compliance unit for a determination regarding penalties. The issue of Mr. Jacobs' attorneys' fees is deferred at this time.

5. This matter is set for a Scheduling Hearing on December 11, 2017, at 1:30 p.m. C.S.T. The parties or their counsel must call 615-253-0010 or toll-free at 855-689-9049 to participate in the hearing. Failure to call may result in a determination of the issues without your participation.

6. Unless appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

7

**ENTERED THIS THE 31 DAY OF OCTOBER, 2017.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Technical Record

1. Amended Petition for Benefit Determination
2. Dispute Certification Notice
3. Expedited Hearing Brief of Petitioner
4. Brief of United Steelworkers
5. Bridgestone Response to REH
6. Bridgestone Witness and Exhibit List
7. Petitioner's Exhibit List
8. Request for Expedited Hearing
9. United Steelworkers' Objections to DCN and Supplemental Issues

Exhibits

1. First Report of Injury
2. Wage Statement
3. Affidavit of Mr. Jacobs
4. Rutherford County EMS records
5. Vanderbilt medical records
6. Medical expense summary
7. Bridgestone's response to Requests for Admissions
8. Mr. Jacobs' response to Requests for Admissions

9. Photographs of accident scene
10. Photographs of Mr. Jacobs
11. Denial letter from Sedgwick
12. Out-of-pocket prescription expenses
13. Mileage summary
14. Updated medical expense summary
15. Bridgestone payment/detail log
16. TOSHA Order of Dismissal
17. Collective Bargaining Agreement
18. TOSHA Investigation witness report

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 31st day of October, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
| --- | --- | --- | --- | --- |
| Jim Higgins | | | X | JSH@Higgensfirm.com |
| Nick Akins | | | X | nakins@morganakinscom |
| Terry Fann | | | X | tfann@bellsouth.net |
| Compliance Unit | | | X | WCCompliance.Program@tn.gov |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov