**FILED**

**February 7, 2018**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 1:50 P.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD
### (HEARD JANUARY 10, 2018 AT JACKSON)

| | | |
|---|---|---|
| Thomas Wayne Jacobs | ) | Docket No.   2017-05-0132 |
| | ) | |
| v. | ) | State File No. 5629-2017 |
| | ) | |
| Bridgestone Americas Tire | ) | |
| Operations, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Robert V. Durham, Judge | ) | |

---

### Affirmed and Remanded—Filed February 7, 2018

---

The employee, a tire builder for a tire manufacturer and an elected union official, suffered severe burns when a co-worker poured gasoline into a "burn barrel" outside the union hall during a break.  The tire manufacturer denied the employee's claim for workers' compensation benefits on the basis that the accident did not occur in the course and scope of his work as a tire builder.  The tire manufacturer also asserted that, to the extent the employee's injuries did occur in the course and scope of his employment, they occurred while he was performing work for the union and, therefore, the union should be responsible for any workers' compensation benefits to which the employee might be entitled.  The trial court concluded the employee was likely to prevail in establishing his injuries arose out of and occurred in the course and scope of his employment with the tire manufacturer and awarded benefits.  The tire manufacturer has appealed.  We affirm and remand the case.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Nicholas S. Akins, Nashville, Tennessee, for the appellant, Bridgestone Americas Tire Operations, LLC

James S. Higgins, Nashville, Tennessee, for the appellee, Thomas Wayne Jacobs

Terry A. Fann, Murfreesboro, Tennessee, for the appellee, United Steel Workers Local 1055L

1

## Factual and Procedural Background

Thomas Jacobs ("Employee") was hired in 1994 by Bridgestone Americas Tire Operations, LLC ("Bridgestone"), as a tire builder. In 2015, he was elected by United Steel Workers Local 1055L ("the union") to a three-year term as a "time study representative." During this time, Employee was not expected to perform work as a tire builder and, as a union representative, he reported to the union hall located approximately one mile from Bridgestone's manufacturing plant. Both Employee and Bridgestone acknowledged that Employee remained employed by Bridgestone and received his regular wages from Bridgestone during his term as a union official.

On January 5, 2017, Employee was taking a break at the union hall with other union officials. As they were standing around a burn barrel to keep warm, one of Employee's co-workers, Rodney Phillips, poured gasoline into the barrel in order to strengthen the fire. The gas container exploded, resulting in burns to Employee's arms, hands, torso, and face. There is no dispute that the accident occurred, that Employee suffered severe injuries, that he has been unable to work since the date of the accident, or that he has incurred reasonable and necessary medical expenses as a result of his injuries.

Bridgestone denied Employee's workers' compensation claim on the basis that his injuries did not occur in the course and scope of his employment with Bridgestone. Bridgestone asserted that Employee was engaged in activities that provided no benefit to Bridgestone, as he was not performing any duties as a tire builder, was not on Bridgestone's property, and was not engaged in certain activities set out in the parties' collective bargaining agreement ("CBA") triggering coverage for injuries sustained during those activities. Bridgestone further argued that, if Employee was engaged in work activities at the time of the accident, it was the work of the union and, therefore, the union should be responsible for paying his workers' compensation benefits.

Employee filed a petition for benefit determination asserting that Bridgestone was responsible for his workers' compensation benefits because his injuries occurred while he was on a break, an activity that falls within the personal comfort doctrine. Employee further argued that the union was not his employer and that, during his tenure as a union representative, he remained an employee of Bridgestone.

The parties disputed whether Employee was "on the clock" at the time of the accident. Employee's timecards indicated his workday ended before the accident occurred. However, testimony at the expedited hearing reflects that another person at the union hall filled out timecards for Employee, which were then provided to Bridgestone, who paid Employee's wages. Employee testified that, while the timecard for the day of the accident reflected his usual work hours, he had actually arrived at work later than normal because the union needed someone to be available to answer the phones later in

2

the afternoon. As a result, Employee's testimony was that he was still on the clock when the accident occurred.

Employee further testified that he and other union representatives had taken a late lunch and that, upon returning to the union hall, he had checked his email for correspondence he was expecting from the National Labor Relations Board ("NLRB"). When he saw the correspondence had not arrived, he went outside for a break. The union representatives had spent time that day cleaning up the area around the union hall and had put yard waste in the burn barrel to dispose of it. Employee testified that, as he was turning toward a picnic table to pick up a cigar, Mr. Phillips poured gasoline into the barrel to reignite the fire. An explosion occurred and Employee was burned.

Employee also testified that, although he had been serving as a union representative, he remained an employee of Bridgestone, keeping his seniority and other benefits while serving as a time study representative at the union hall. The evidence was undisputed that Bridgestone continued to pay Employee, provided him with W-2's, paid his short-term disability benefits pursuant to a disability benefits policy available to Bridgestone's employees, and directed him to take a drug test following the accident.

JoAnn Kennedy, a Bridgestone human resources official, testified that Employee was considered to be a Bridgestone employee at the time of the accident. She also testified that Bridgestone retained the right to terminate employees who were elected as union representatives, even while they were performing duties as a union representative and not performing their regular job duties in the plant. According to Ms. Kennedy, Bridgestone had terminated the previous time study representative during his tenure as a union representative for violating Bridgestone's drug and alcohol policy.

Bridgestone acknowledged there were certain circumstances, as set out in the CBA, under which a union representative's injuries would be covered under Bridgestone's workers' compensation policy, but asserted that the injuries suffered by Employee did not fall within those circumstances. Bridgestone further argued that Employee's activities throughout the day were so far removed from any duties he had with respect to Bridgestone that it would be inequitable to require Bridgestone to pay him workers' compensation benefits. According to Bridgestone, Employee's activities around the union hall the day he was injured were unrelated to his duties as a time study representative or as a tire builder and, therefore, the resulting injuries were not compensable.

The union, on the other hand, asserted that it was not an employer at all and, therefore, bore no responsibility for any workers' compensation claims. It maintained that Employee remained employed by Bridgestone and that the union provided no compensation or other benefits for the performance of any of his job duties. According to the union, it is merely composed of members who elect individuals to perform certain

functions as union representatives and, as a result, it does not carry workers' compensation insurance.

The trial court concluded that Bridgestone was Employee's employer for workers' compensation purposes and that the personal comfort doctrine brought his activities at the time of the accident within the course and scope of his employment. The court awarded temporary disability and medical benefits. Bridgestone has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2017). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2017).

## Analysis

Bridgestone raises several issues on appeal, which we restate as: (1) whether Employee presented sufficient evidence to conclude he is likely to prevail at trial in establishing his injuries occurred in the course and scope of his employment, (2) whether Bridgestone or the union is liable for Employee's workers' compensation benefits, and (3) whether the union was a "special employer" at the time of the accident.

## A.

We first address whether Employee presented sufficient evidence to show he is likely to prevail at trial in establishing that his injuries occurred in the course and scope of his employment. The trial court concluded that he did, and we agree.

A key component of the 2013 Workers' Compensation Reform Act is the requirement that the injury for which benefits are sought arise "primarily out of and in the

course and scope of the employment." Tenn. Code Ann. § 50-6-102(14) (2017). Traditionally, courts have held that the statutory requirements that an injury arise out of and in the course and scope of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys., LLC*, 164 S.W.3d 350, 354 (Tenn. 2005). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005).

Bridgestone argues that Employee's activities at the union hall on the day of the accident were so far removed from his duties as a tire builder or as a union representative that his injuries cannot be considered to have occurred in the course and scope of his employment. Bridgestone points to the union representatives' cleaning up the union hall yard and putting waste in the burn barrel, among other maintenance activities. Bridgestone also argues there is sufficient evidence to establish that, by the time the accident occurred, Employee had completed his workday. We are not persuaded.

Employee testified regarding the expectation that union representatives would maintain the union hall and his activities on the day of the accident. With respect to maintaining the union hall premises, Employee testified that, because the union owns the property, it is the responsibility of union representatives and members to keep the building and grounds properly maintained. Addressing the length of his workday on the day of the accident, Employee testified that he had arrived later than usual that day because he was going to "man the phones" that afternoon in order to address grievances made by union members. He testified that during the afternoon he checked his email for expected correspondence from the NLRB and, when it had not arrived, he decided to take a break outside.

Tennessee has long recognized what is commonly referred to as the personal comfort doctrine which, in general, brings injuries suffered by employees while on approved or authorized breaks within the umbrella of compensable injuries. In one case, for example, the employee was injured while on a "pre-work" break, a custom of which the employer was aware and to which it had acquiesced. *Carter v. Volunteer Apparel, Inc.*, 833 S.W.2d 492, 495 (Tenn. 1992). The employer in *Carter* argued that the employee "was doing nothing to benefit her employer and that the break area was being provided by the Company for the [employee's] own personal convenience." *Id.* In rejecting this argument, the Tennessee Supreme Court concluded that the workers' compensation law "does not expressly state that the employee must, at the time of the injury, have been benefiting his or her employer; it merely states that the injury must be one 'arising out of and in the course of the employment.'" *Id.* at 495-96 (internal citation omitted). The Court further noted that

employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred or unless the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment.

*Id.* at 495. Activities that "minister to the personal comfort" of workers were described by the Supreme Court as including "such incidental acts as eating, drinking, smoking, seeking toilet facilities, and seeking fresh air, coolness or warmth." *Id.* The rationale underlying this rule is that "[a]cts necessary to the life, comfort and convenience of an employee while at work are incidental to the employment and contribute to the furtherance of service." *McCormick v. Aabakus, Inc.*, 101 S.W.3d 60, 63 (Tenn. 2000). Accordingly, "injuries that occur in the performance thereof are deemed to have arisen out of the employment." *Id.*[1]

In the present case, Bridgestone argues that Employee's activities throughout the day were so far removed from his duties as a time study representative or tire builder that they cannot be within the course of the employment. Bridgestone points to Employee's activities earlier in the day in cleaning up the grounds at the union hall, as well as activities performed on previous days, such as installing a speaker system. However, and without addressing whether those particular activities would be within the course and scope of the employment, the testimony adduced at the expedited hearing reflects that Employee had come back from lunch, performed duties consistent with his position as a time study representative, and then took a smoke break.[2] At the time of his accident, we cannot say Employee's behavior was such a departure from his employment that his claim should be barred.

Bridgestone understandably emphasizes the unreasonableness of pouring gasoline onto a fire. While we agree with the trial court's observation that such an action was "foolhardy," we cannot ignore the fact that it was a co-worker, not Employee, who poured the gasoline into the barrel. The evidence is undisputed that Employee's actions were not responsible for causing the explosion.[3]

---

[1] We find nothing in the Reform Act of 2013 or subsequent amendments that have rendered the personal comfort doctrine no longer viable.

[2] Bridgestone acknowledged at oral argument that it allows employees to take smoke breaks.

[3] Bridgestone argues that the union hall had no approved break area, citing the testimony of Marcus Hargrove, the union's vice-president, in which he agreed that "there's no approved smoking area at the union hall . . . no break area." However, Mr. Hargrove went on to state that "you can take a break in the building, outside the building, in the trees if you want to. I mean, you can take a break wherever." We take this testimony to mean that the union had no specific designated break area because, other than a

6

Bridgestone also points to Mr. Phillips's testimony in which he indicates that, at the time of the accident, he was off the clock and believed Employee was as well. However, Mr. Phillips acknowledged that he did not know for sure whether Employee had completed his workday. Moreover, Employee's uncontradicted testimony was that he had come in later than usual, had returned from lunch to deal with correspondence from the NLRB, decided to take a break while waiting on the correspondence, and was injured. The trial court accepted Employee's explanation and found him still to be within the course and scope of his work duties. The evidence does not preponderate against the trial court's conclusion that, when the personal comfort doctrine is applied to these circumstances, Employee is likely to prevail at trial in establishing he was injured while in the course and scope of his employment.[4]

## B.

Having decided that the preponderance of the evidence supports the trial court's finding that Employee is likely to prevail at trial in establishing his injuries occurred within the course and scope of his employment, we turn to Bridgestone's contention that, even if Employee was injured while in the course and scope of his employment, he was actually employed by the union, not Bridgestone. Thus, according to Bridgestone, the union should be responsible for paying Employee's workers' compensation benefits. We disagree.

As noted above, the testimony of both Employee and Bridgestone's human resources representative consistently described him as being employed by Bridgestone. Also, it is uncontroverted that Employee's wages continued to be paid by Bridgestone after he was elected a union representative. It is further uncontroverted that Bridgestone issued Employee's W-2 and provided his health insurance and short-term disability benefits. In addition, it is uncontroverted that Bridgestone retained the right to terminate Employee, and it required him to perform a drug test when it was notified of his injuries. Finally, it is uncontroverted that Employee retained his seniority while serving as a union representative and that, if he was not re-elected or decided not to run, he would return to work at Bridgestone's plant as a tire builder with no interruption in his employment.

---

prohibition against smoking in the building, union representatives working at the union hall could see to their personal comfort when and where they saw fit.

[4] Bridgestone relies on several cases to support its position that Employee's activities were not in the course and scope of his employment because those activities were not mutually beneficial to both himself and Bridgestone. *See, e.g.*, *Parish v. Highland Park Baptist Church*, No. E2010-01977-WC-R3-WC, 2011 Tenn. LEXIS 964 (Tenn. Workers' Comp. Panel Oct. 18, 2011); *McClain v. Holiday Ret. Corp.*, No. M2001-02850-WC-R3-CV, 2002 Tenn. LEXIS 506 (Tenn. Workers' Comp. Panel Nov. 12, 2002); *Webster v. Seven-Up Bottling Co.*, 362 S.W.2d 244 (Tenn. 1962). However, none of these cases involve the personal comfort doctrine and, thus, are not helpful in resolving the present case.

In contrast to Bridgestone's actions, the union paid Employee no wages and provided him no benefits. Union representatives testified, without contradiction, that the union had no employees and provided no employment benefits, including workers' compensation insurance. Simply put, there is no evidence of any type of employment relationship between the union and Employee.

Under Tennessee law, injuries sustained by union representatives while performing their union duties generally arise out of the employment relationship with the employer. *See Jones v. Hartford Accident & Indem. Co.*, 811 S.W.2d 516, 519-20 (Tenn. 1991). Thus, employers are responsible for paying workers' compensation benefits unless the benefit to the employer is "so tenuous" as to justify a contrary result. *Id.* at 520. Here, even though Employee was on union property taking a break while performing his union duties, his activities were of sufficient benefit to Bridgestone to obligate Bridgestone to pay workers' compensation benefits as Employee's employer. Again, the "comfort and convenience of an employee while at work are incidental to the employment and contribute to the furtherance of service" to the employer. *McCormick*, 101 S.W.3d at 63.

Bridgestone also relies on language in the CBA describing Bridgestone's liability for workers' compensation benefits for union officials while they are "on leave of absence." Under such circumstances, workers' compensation coverage is provided if the injury occurs "in the factory," while attending a company sponsored conference, or while attending a joint labor management meeting. As Employee was not injured under any of these circumstances, Bridgestone asserts it is not liable. However, the CBA conditions Employer's limitations of coverage on the union official's status as being "on leave of absence." Here, it is undisputed that Employee had not applied for and had not been granted a leave of absence as the CBA contemplates so as to trigger the limiting circumstances identified in the CBA. Indeed, when Bridgestone's human resources representative was asked about the leave of absence provision, she stated, "actually, it's never really done." Thus, we have no difficulty concluding that the CBA poses no obstacle to Employee's claim for workers' compensation benefits.

## C.

Finally, Bridgestone argues that the union was a "special employer" at the time of the accident. As such, Bridgestone asserts that, even though Employee remained employed by Bridgestone, the union should be held responsible for his workers' compensation benefits.[5]

___

[5] Generally, "[w]hen [an employer] loans an employee to a special employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work. The [Supreme] Court indicated that when the above test is satisfied, the burden to compensate is placed upon the special

Although Bridgestone mentioned this issue briefly in its closing argument at the expedited hearing, it did not present any evidence regarding the purported special employer/employee relationship at the hearing. Moreover, the trial court made no findings with regard to this issue. Indeed, there is no mention of it in the court's expedited hearing order, and we decline to decide the issue in the first instance on appeal. *See Fritts v. Anderson Cty. Election Comm'n.*, No. E2003-00015-COA-R3-CV & No. E2002-03118-COA-R3-CV, 2003 Tenn. App. LEXIS 564, at *8 (Tenn. Ct. App. Aug. 11, 2003) ("It is inappropriate for this Court to assume the role of original fact finder."); *see also Panzarella v. Amazon.com, Inc.*, No. 2015-01-0383, 2017 TN Wrk. Comp. App. Bd. LEXIS 5, at *12 (Tenn. Workers' Comp. App. Bd. Jan. 18, 2017) ("It is not for us, in the first instance, to determine the benefits due Employee, if any."); *Buckner v. Eaton Corp.*, No. 2016-01-0303, 2016 TN Wrk. Comp. App. Bd. LEXIS 84, at *12 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2016) ("[I]t is not our place to address . . . issues [not resolved by the trial court] in the first instance on appeal.").

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision. Accordingly, the trial court's decision is affirmed and the case is remanded for any further proceedings that may be necessary.

---

employer whose work is being performed." *Catlett v. Indem. Ins. Co.*, 813 S.W.2d 411, 415 (Tenn. 1991) (internal quotation marks and citations omitted).



**FILED**

**February 7, 2018**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 1:50 P.M.**

**TENNESSEE BUREAU OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Thomas Wayne Jacobs | ) | Docket No.   2017-05-0132 |
| | ) | |
| v. | ) | State File No.  5629-2017 |
| | ) | |
| Bridgestone Americas Tire | ) | |
| Operations, LLC, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 7th day of February, 2018.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **James Higgins** | | | | | X | jsh@higginsfirm.com |
| **Nicholas S. Akins** | | | | | X | nakins@morganakins.com |
| **Terry A. Fann** | | | | | X | tfann@bellsouth.com |
| **Robert V. Durham, Judge** | | | | | X | Via Electronic Mail |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov